UNITED STATES of America,

v.

Theodore F. STEVENS, Defendant.

Criminal No. 08–231(EGS).

United States District Court,
District of Columbia.

Jan. 21, 2009.

Edward P. Sullivan, Nicholas A. Marsh, Patty Merkamp Stemler, Paul M. O'Brien, William J. Stuckwisch, Brenda K. Morris, David L. Jaffe, U.S. Department of Justice, Washington, DC, James A. Goeke, Joseph W. Bottini, U.S. Attorneys Office, Anchorage, AK, for Plaintiff.

Brendan V. Sullivan, Jr., Craig D. Singer, Alex Giscard Romain, Beth A. Stewart, Joseph Marshall Terry, Jr., Robert Madison Cary, Williams & Connolly LLP, Washington, DC, for Defendant.

## OPINION & ORDER

EMMET G. SULLIVAN, District Judge.

On January 16, 2009, 593 F.Supp.2d 177 (D.D.C.2009), the Court directed the Attorney General or his designee(s) to provide declaration(s) and supporting documentation related to the Department of Justice's determination as to whether a Federal Bureau of Investigation ("FBI") agent alleging very serious and intentional law enforcement and prosecutorial misconduct during the investigation and trial in this case was entitled to whistleblower protection, and when any such determination was communicated to the Office of Public Integrity ("OPI"). For the reasons set forth herein, the Court will **VACATE** its January 16, 2009 Order in its entirety and instead **ORDER** that all communications to, from, or between anyone in OPI, and any other office within DOJ, including but not limited to the Office of Inspector General ("OIG"), the Office of Professional Responsibility ("OPR"), the FBI, and the U.S. Attorney's Office for the District of Alaska, between November 15, 2008 and

the present regarding the complaint filed by Special Agent Chad Joy ("the Joy Complaint"), be filed under seal with the Court, with a copy provided to the defendant pursuant to the protective order already in place in this case, by no later than January 30, 2009.[1] The Court will also continue the Status Hearing previously scheduled for January 29, 2009 to February 2, 2009 at 3:00 p.m.

## I. BACKGROUND

On December 11, 2008, the government filed under seal a copy of a complaint made by an FBI agent assigned to the investigation and trial of the defendant, Senator Ted Stevens. In the complaint, the agent states that as the co-case agent on the Stevens investigation, he "witnessed or learned of serious violations of policy, rules, and procedures as well as possible criminal violations." The complaint alleges, among other things, that prosecutors on the case schemed to relocate a government witness, who had been subpoenaed by both the government and the defendant, in order to avoid having that witness testify at the trial;, attempted to conceal exculpatory information from the defendant; and mishandled evidence. The complaint also alleges that the lead FBI agent in charge of the investigation fostered an inappropriate relationship with the government's main witness; intentionally redacted exculpatory information from a document turned over to the defendant, in order to make that document "fit" with information previously provided to the defendant; and violated numerous rules and regulations, including disclosing to a source that another source had testified before the Grand Jury.

In a motion to seal and a motion to file ex parte, the government sought to avoid revealing to the defense much, if not most, of the information in the complaint and to completely hide the existence of the complaint and the complaint's allegations from the public. In support of its position that the complaint should not be made public, the government stressed that Agent Joy had filed his complaint as a whistleblower complaint and never intended for it to be made public, that publicizing the complaint could interfere or impede OPR's internal investigation into the allegations made in the complaint, and that Agent Joy and the individuals named in the complaint had privacy interests that outweighed any competing interest in public disclosure. The defendant was strongly opposed to keeping the complaint sealed, arguing that the Sixth Amendment protected his right to a public trial and that the First Amendment protected the public's interest in these proceedings and, accordingly, that the complaint must be made public. After expedited briefing, the Court held a sealed hearing on December 19, 2008 to hear arguments on the government's motions to seal the complaint and to keep much of the complaint from the defendant.

From the outset of this case, despite a very busy docket, this Court has gone to great lengths to accommodate both parties, sensitive to their interests in the prompt resolution of any disputes or requests for relief. On countless occasions both before, during, and after the trial in this case, the Court has rearranged its schedule to hear from the parties in court, often at the government's request, and often on the same day that the matter was first brought to the Court's attention.

---

1. To be clear, the Court is not requiring production of any internal communications within any of these other offices within DOJ or any communications between these offices that did not include OPI. The Court is only requiring communications regarding the Joy complaint that included anyone in OPI.

Consistent with the Court's approach throughout these proceedings, the government's motions related to the Joy complaint were given very prompt and careful consideration. In fact, despite the serious legal issues presented, the Court ordered briefing, heard arguments, and issued a 29–page Opinion and Order within just eight days of the government first filing its motions. And as recently as January 14, 2009, the Court scheduled an afternoon hearing in response to a request from the government made that morning. Further, the defendant is currently awaiting sentencing, and there are at least eight post-trial motions pending that must be resolved before this litigation can move to the next stage. These motions cannot be heard and resolved until the parties and the Court have the relevant information, the motions are fully briefed, and the Court has had time to consider the significant and complex issues presented.

## A. The December 19, 2008 Hearing

At the sealed hearing, Brenda Morris, Deputy Chief of the Office of Public Integrity, spoke for the government. Ms. Morris first argued that the government had provided the complaint, in heavily redacted form, to the defendant "out of an abundance of caution," rather than due to any legal obligation to do so. *See* Tr. at 9. In response to that argument, the Court questioned Ms. Morris as to whether the complaint, which makes serious allegations of law enforcement and prosecutorial misconduct in the investigation and trial of the defendant, was not in fact exculpatory information the government was obligated to produce to the defendant. Ms. Morris denied that the information was even relevant to the defense, based on a theory that any misconduct had previously been addressed by the Court before or during the trial. She also repeatedly refused to answer the Court's questions regarding the government's position as to any legal obligation to produce the complaint as *Brady* evidence, based on the grounds that she was, in her own words, both "a witness in this matter," i.e., the investigation into the complaint, and "biased":

> THE COURT: If you were a defense attorney you'd want this information, wouldn't you?
>
> MS. MORRIS: Judge, you know, this is very difficult for me to say because I am a witness in this matter and I'm very sensitive—
>
> THE COURT: You're bringing up other issues now that we haven't gotten to and I really don't want to go down that road, you know, about who represents the government. I just want to deal with the hypothetical. If you were a defense attorney you'd be raising a storm about that information and you know it, don't you? You can look me in my eye and tell me.
>
> MS. MORRIS: It's not about looking in your eye and telling you or not, Judge.
>
> THE COURT: But, you know, it doesn't—
>
> MS. MORRIS: I'm biased in the situation, Judge.
>
> * * *
>
> THE COURT: So I can't get an answer from you as to whether you'd want that information if you were a defense attorney?
>
> MS. MORRIS: Again, Judge, it's very difficult for me to say because I was there. I saw what happened, and is there a [grain of] truth in some things? Yes, there is a [grain of] truth, but it's not telling you the whole thing of what was happening and I don't want to put

the cart before the horse.[2]

* * *

THE COURT: You're the chief deputy of that office, and you know that's favorable information. You know it. You know, you don't want to give me an answer, that's fine. But, you know, if you were a defense attorney and you learned about that, you would be making your case: Judge, I'm entitled to that because that's favorable to the accused. And if the government argued that it's not true, let some fact-finder determine it, Judge, we're entitled to use it. If you didn't want to give me an answer, that's fine.

MS. MORRIS: You know, I'm trying my best to be unbiased, but I am. I know what the situation was, so it's very difficult and I don't want to say too much because I want the system to work.

Tr. at 20–25.

Ms, Morris continued to speak for the government on that issue, despite her own self-described "bias" and her recognition of a conflict of interest created by the fact that she was a witness in the investigation of the complaint. This is troubling, particularly because there were three other attorneys present for the government, including the Chief of the Office of Public Integrity, William Welch, the Chief of the Appellate Section, Patty Stemler, and Mark Levin, also with the Office of Public Integrity. However, as the Court's discussion with Ms. Morris regarding one of the allegations in the complaint revealed, it may be that none of these attorneys could have candidly answered the Court's questions based on similar conflicts.

The Joy complaint alleges that the prosecution deliberately concealed exculpatory information in an FBI Form 302, in violation of *Brady/Giglio* and in violation of an Order from the Court requiring the government to produce all witnesses' 302s, an Order that was prompted by the government's previous discovery violations. At the hearing, there was a discussion about that allegation:

MS. MORRIS: But to get back to the point of the 302, with regard to that, we were quite candid with you, Judge. The reason why the Court was put on notice late that night, and defense, the night before we came in, is because we were debating it. I was there, William Welch, our chief, was there. We were debating what is this, how is this, what do we do with it, and I made that all clear and open to you during the course of that proceeding in that it was preparing Agent Pluta for her testimony that it was discovered, that this document had been redacted. As a matter of fact, Judge, for the record, it was Mr. Marsh who came to us and said we gave this 302 over in redacted form and I think it should have been unredacted, so it was all of us in a group effort. It was at least ten of us in the room going back and forth as to what is it and how we best deal with it, so, I mean, Judge, just like that maybe his, Agent Joy's recollection or his belief of what may have happened-I was present. I'm going to be a witness too. Bill Welch, he'll be a witness.

Tr. at 12–13. In view of Ms. Morris's responses and the nature of the complaint's allegations, it is unclear whether any of the attorneys in OPI involved in this case could provide unbiased and can-

2. The transcript reads "greater truth" rather than "grains of truth," but as the context and Court's next question (not quoted here) make clear, that is an error and it should read "grains of truth."

did information regarding the complaint and its allegations.

During the December 19, 2008 hearing, the government argued that the complaint should not be made public in view of the potential whistleblower protections and privacy interests at stake. It was the whistleblower concerns that prompted the Court, prior to the hearing, to inquire as to whether Agent Joy had an attorney and, upon learning that Agent Joy was represented, to invite the attorney, J.D. Simpson, to attend the sealed hearing. Mr. Simpson was present at the hearing, and he echoed the government's position, arguing that his client's complaint should not be released based on whistleblower protections:

> MR. SIMPSON: The issue, one of the issues that I thought I needed to address was his intent, and his intent was that this would be processed within the strictures of the Whistleblowers Act and the subsequent regulatory cottified [sic] federal regulations that implemented that act as it pertains to the Department of Justice. Special Agent Joy expected that his concerns as expressed in that letter would be investigated as appropriate within the established procedures of the process of the Department of Justice.
>
> * * *
>
> The fact that Special Agent Joy would not have chosen that particular form certainly speaks of the possibility of a chilling effect on federal employees engaging in what they believe their duty is to report some kind of conduct that is questionable, that satisfies the requirements that are identified in the whistleblower proces. In fact, Special Agent Joy, which is not necessarily an issue in this proceeding, has expressed a concern that if his letter—if the complaint is made public, that he may possibly be subject to retaliation in some form from his employer, be it the FBI or the Department of Justice.

December 19, 2008 Tr. at 35–36.

Based on the arguments by the government and Mr. Simpson on the one hand, and the opposing arguments made by the defendant on the other, the Court made clear at the outset of the hearing that in the Court's view, the question before the Court was whether a whistleblower's rights to anonymity trumped a criminal defendant's and the public's constitutional rights to a public trial:

> THE COURT: What's a fair approach that a trial judge should have in dealing with this person who [sees] himself as a whistleblower claims about policies not being followed and potentially obstruction of justice and people doctoring documents? What am I supposed to do, just close the book on that and just let that administrative proceeding just unwind and let the chips fall where they may? We probably wouldn't find out what happened anyway. And what do I tell the defendant?

*See* Tr. at 9–10.

Upon hearing that the Court believed it was faced with an individual protected or arguably protected as a whistleblower, none of the four attorneys present for the government—Ms. Morris, Mr. Welch, Ms. Stemler, or Mr. Levin—informed the Court that Agent Joy had not been afforded whistleblower status. This is particularly significant because the Court also made it absolutely clear that, in the Court's view, any determination of such status was beyond the Court's jurisdiction and instead rested solely with the Department of Justice:

> THE COURT: I'm not trying to do anything to impede any investigation by anyone. Far be it from me. First of all, I don't have jurisdiction or any inter-

est in getting involved in that matter. It should go forward to the extent it can. But that's between OPR on the complaint [sic] and the witnesses and the Department of Justice. The matter's beyond my concern and authority, but I have concern about this case because we've invested months in trying this case and, you know, months in pretrial proceedings and the trial and probably months in the post trial proceedings and thereafter, and I have a vested interest in ensuring that the integrity of the trial process, which has not been compromised in the Court's view, is maintained, and that's difficult, you know, but then that's what we get paid to do. We have to balance all these competing considerations.

*See* Tr. at 9.

In was in an effort to balance these competing interests, including a potential whistleblower on one hand and a criminal defendant pending sentencing on the other, that the Court determined that the complaint should be released. Nevertheless, in view of the whistleblower rights and privacy interests expressed by the government, the complaint would be redacted to shield Agent Joy's identity and any identifying information of the individuals named in the complaint. Accordingly, on December 22, 2008, after affording both sides and Agent Joy an opportunity to suggest redactions and make any objections, the Court directed that the redacted complaint be posted on the public docket. Also on December 22, 2008, the defendant filed a Motion to Dismiss the Indictment, or, in the Alternative, Motion for a New Trial, Discovery, and an Evidentiary Hearing based on the allegations raised in the Joy complaint.

**B. The January 14, 2009 Hearing**

On January 14, 2009, the government initiated a call to chambers, with defense counsel on the line, to request, in a reversal of its earlier position, that it be permitted to file on the public docket a version of the complaint that revealed the identities of the individuals named in the complaint. The Court scheduled a hearing for that afternoon to hear any objections related to the government's request. At the hearing, held in open court, the government, represented by Mr. Welch and Ms. Morris, explained that it had found it difficult to respond to the defendant's Motion to Dismiss the Indictment, or, in the Alternative, Motion for a New Trial, Discovery, and an Evidentiary Hearing, without revealing the government employees' identities. Moreover, the government explained, it had contacted the government employees and they did not object to having their identities revealed. Finally, Mr. Welch informed the Court that the author of the complaint, Agent Joy, had not been granted whistleblower protection by OIG.

> MR. WELCH: One other thing I did want to note. With respect to the complaining individual status, that individual does not qualify for whistleblower status.

*See* January 14, 2009 Tr. at 8.

Because of the significance that Agent Joy's whistleblower status had played in the Court's original decision to release only a redacted version of the complaint, and the relevance of that status to the government's pending request to publicly release more of the complaint, the Court asked a follow up question as to when the government learned this information. The government then revealed to the Court— *for the first time*—that Agent Joy had been notified as early as December 4, 2008 that he had not been afforded whistleblower protection. *See* Attached Letter to Agent Joy dated December 4, 2008.

THE COURT: Let me just ask you this question, though. When did your office learn that he was denied—that the person was denied whistleblower protection?

MS. MORRIS: It was sometime after our sealed hearing here, Judge. Or is that correct? Did we learn—no, I think it was.

THE COURT: I need to know that.

MR. WELCH: It remained unclear. I think at one point he got a letter but he was afforded the right to re-amend. The letter that he had issued—

THE COURT: Was he told—was he told that he was denied status before the hearing? The last hearing?

MS. MORRIS: I believe, Judge—

THE COURT: I don't want to guess about this. I need to know.

MR. WELCH: Then we need to be clear about it.

Tr. at 15.

Significantly, that December 4, 2008 notification came at least seven days before the government filed its motions to seal the complaint and to file ex parte—seven days when, according to the prosecution, it was receiving "additional information, guidance and advice to satisfy itself that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed"—and fifteen days before the hearing and the Court's Opinion and Order on the government's motions.

The government has since backed away from this position and, remarkably, has offered yet another answer as to Agent Joy's whistleblower status. In a motion for reconsideration filed January 15, 2009, the government completely reversed the position taken at the hearing the day before and now asserts that "[t]he Department has never determined that Agent Joy is not entitled to whistleblower protection, and has never so advised him." Mot. for Recon. at 1. However, that pleading fails to explain when OPI first received the December 4, 2008 letter that it allegedly "misconstrued" as a determination that Agent Joy did not qualify for whistleblower protection. More importantly, the government does not explain the basis for Mr. Welch's representation to the Court at the January 14, 2009 hearing that OPI had ascertained that Agent Joy did not qualify for such protection.

Finally, the Court finds the position in the Motion for Reconsideration to be completely incredible because the government took the position at the hearing the day before that the Court could unseal Agent Joy's identity in light of the determination that he had been denied whistleblower status. In fact, the government said that it had spoken to Agent Joy's attorney and that, while Agent Joy did not want to have his identity revealed, he understood that was a possibility. It simply strains credulity to suggest that the government would take a position on something as serious as the publication of a possible whistleblower complainant's identity based merely on that December 4, 2008 letter, particularly in view of the government's repeated representations that it went to great lengths over nine days to "satisfy itself that any possible statutory and regulatory confidentiality concerns surrounding a request for whistleblower protection had been fully explored and addressed ..." Sealed Memorandum at 2. Because this most recent "explanation" provided by the government in its Motion for Reconsideration raises more questions than it answers, it provides yet another reason for the Court's determination that an accounting of the communications with OPI regarding Agent Joy's whistleblower status is necessary.

In the face of what appears to be another incident in an ongoing series of incidents in which the Court has relied on information provided by the government only to later learn that the government had misled the Court and/or misrepresented the facts, the Court sought an explanation from officials at the Department of Justice as to what and when OPI was told regarding Agent Joy's whistleblower status. In view of the lead prosecutor, Ms. Morris's, self-described "bias" and her inability to candidly and openly answer the Court's questions about this complaint during the December 19, 2008 hearing—because she is, as she put it, "a witness in this matter,"—the Court determined that the explanation would need to come from an attorney senior to Ms. Morris. Moreover, in view of the Chief of the Office of Public Integrity, Mr. Welch's, similar position as a witness in the investigation, as well as his participation in the December 19, 2008 and January 14, 2009 hearings, and his conflicting representations during those hearings, the Court determined that an explanation from a senior official with oversight responsibility for OPI during the relevant time frame was necessary and appropriate.

The Court further concluded that the information should be provided expeditiously because this most recent incident occurs at a critical juncture, (1) when there are complicated motions pending that must be resolved before sentencing or an evidentiary hearing and/or a new trial can be scheduled—motions that are based on allegations of law enforcement and prosecutorial misconduct and one of which is based on the Joy complaint, and (2) because the officials with oversight responsibility during the relevant time frame were presumably preparing to leave office in view of the change in Administration.

## II. THE JANUARY 16, 2009 ORDER

In response to the developments during the January 14, 2009 hearing, and upon consideration of the entire record in this case, including the government attorneys' self-acknowledged conflicts of interest with respect to this complaint, the Court directed the Attorney General or his designee(s) to provide declaration(s) and supporting documentation regarding communications and decisions related to Agent Joy's status as a whistleblower by the relevant offices within the Department of Justice.[3]

Furthermore, in view of the time-sensitivity created by (1) the defendant's interest in a timely resolution of his pending motions for relief, motions that are primarily based on allegations of law enforcement and prosecutorial misconduct during the investigation and trial and motions on which these most recent developments have a direct bearing; (2) the Court's interests in promptly resolving these complex motions in order to timely move this case to the next stage; and (3) the impending departure of the individuals with oversight responsibility for the offices and individuals involved in the relevant decisions during the relevant time frame, this Court directed that the declaration(s) be filed by 5:00 p.m. on January 17, 2009.

3. On January 14, 2009, 2009 WL 6525928, the Court initially ordered that the Attorney General file a declaration with the relevant information by January 16, 2009. In response to the government's Motion for Reconsideration, however, the Court directed that the Attorney General could designate one or more officials with oversight responsibility for the relevant offices within the Department of Justice to provide the declaration(s) and the Court extended the deadline to January 17, 2009, thus affording the government more than three days to conduct this limited search for information related to Agent Joy's whistleblower status.

The government has not submitted any information in response to the Court's Order. The government has, however, represented that it is working on gathering the required information and needs additional time to complete that process. *See* Emergency Motion for a Stay, filed January 16, 2009.

## III. Conclusion

In view of the change in Administration on January 20, 2009, and the potential for further delay due to anticipated multiple changes in personnel at the Department of Justice, the Court *VACATES* its January 16, 2009 Order directing the Attorney General or his designee(s) to file a declaration. It is further

**ORDERED** that the government produce all communications to, from, or between anyone in OPI, and any other office within DOJ, including but not limited to the OIG, OPR, the FBI, and the U.S. Attorney's Office for the District of Alaska, between November 15, 2008 and the present, regarding the complaint filed by Agent Joy, to be filed under seal with the Court, with a copy provided to the defendant pursuant to the protective order already in place in this case, by no later than January 30, 2009.[4] The substance of all oral communications shall be set forth in an appropriate declaration. The production shall be accompanied by a declaration under oath detailing the process undertaken to search for the relevant communications. It is further

**ORDERED** that the Status Hearing previously scheduled for January 29, 2009 is continued to February 2, 2009 at 3:00 p.m.

**SO ORDERED.**

---

4. Again, to be clear, the Court is *not* requiring production of any internal communications within any of these other offices within DOJ or any communications between these offices

### ATTACHMENT A

**U.S. Department of Justice**

Office of Professional Responsibility

*Washington, D.C. 20530*

*VIA PDF E-MAIL*

Special Agent Chad Joy

Federal Bureau of Investigation

FBI Anchorage Division

101   East Sixth Avenue

Anchorage, AK 99501

Dear Special Agent Joy:

This Office was referred for handling your undated document (Document) containing complaints about the conduct of a Federal Bureau of Investigation (FBI) Special Agent identified as your co-case agent in the FBI's POLAR PEN investigation.

As you may be aware, the primary jurisdiction of the Office of Professional Responsibility (OPR) is to investigate allegations of misconduct involving Department of Justice (DOJ) attorneys that relate to their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by DOJ law enforcement personnel when they are related to allegations of attorney misconduct within OPR's jurisdiction.  Your Document appears to raise such allegations against the FBI Special Agent and several Department of Justice prosecutors identified in your letter as being involved in the prosecution of *United States v. Theodore Stevens*, No. 08–231 (D.D.C.).  We therefore intend to investigate the matters raised in your letter pur-

that did not include OPI. The Court is only requiring communications regarding the Joy complaint that included anyone in OPI.

suant to this primary jurisdictional authority.

As you may also be aware, pursuant to 28 C.F.R. § 27.3, OPR also has jurisdiction to act as an "Investigating Office" regarding allegations of "reprisals" against FBI employees disclosing violations of laws, rules or regulations. Since, however, this secondary jurisdictional authority is limited to instances of alleged reprisal taken against the disclosing employee, and since your Document did not allege any such reprisal, please be advised that we lack jurisdiction to initiate an investigation pursuant to 28 C.F.R. § 27.3 into whether you are entitled to relief as an aggrieved whistleblower. Should you come to believe that you have been subjected to or threatened with any such reprisal, please contact either this or any other office identified as a "Receiving Office" in 28 C.F.R. § 27.1 for reconsideration of the matter.

The matters alleged in your Document bear heavily on the *Stevens* case which, as you are undoubtedly aware, is the subject of ongoing litigation. Please be further advised, therefore, that attorneys responsible for the litigation of that case or investigating agents acting at their direction may seek to interview you regarding those matters pursuant to their obligation to conduct the *Stevens* litigation.

If you have any questions, please contact this Office at 202–514–3365.

Sincerely,

H. Marshall Jarrett
Counsel